**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

ANDRES GOMEZ,

Plaintiff,

vs.

BRIDGESTONE RETAIL OPERATIONS, LLC
d/b/a Tires Plus, and www.tiresplus.com,

Defendant

---

# COMPLAINT

---

COMES NOW Plaintiff Andres Gomez ("Plaintiff"), by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Bridgestone Retail Operations, LLC for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and pursuant to the common law tort of trespass and alleges as follows:

## INTRODUCTORY STATEMENT

1. Plaintiff brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Bridgestone Retail Operations, LLC's business.

2. Businesses can make choices (unlike visually impaired individuals) and can either make their business inclusive, or they can make them effective **Zones of Discrimination** and exclude the visually-impaired.

3. When business owners do not take steps necessary to notice people of their businesses limitations to provide auxiliary aids and services, they are not only marginalizing the visually impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, i.e.: second-class citizens.

4. This case arises out of the fact that Defendant Bridgestone Retail Operations, LLC has operated its business in a manner and way that completely excludes individuals who are visually impaired from access to Defendant's business based upon Defendant's failure to provide auxiliary aids and services for effective communications.

5. Defendant Bridgestone Retail Operations, LLC (also referenced as "Defendant") owns and operates places of public accommodation which are retail tire stores that also installs tires and provide auto repair/ maintenance services (therefore are also auto repair facilities) under the brand name "Tires Plus." Tires Plus stores offer for sale to the public automobile tires, batteries, and offer auto repair services (including but not limited to: oil changes, tune-ups, alignment, and break service), which is heretofore, referenced as "Tires Plus merchandise" or "Tires Plus service."

6. This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's business (which includes Defendant's Website) so that Plaintiff (and other

individuals who are visually impaired) can access and communicate with Defendant effectively and timely such that their access to Defendant's places of public accommodation (which are retail tire stores and auto repair/ maintenance shops) are not impeded; as such impediment has rendered Defendant's physical places of accommodation not fully accessible to the visually impaired.

7. This complaint also seeks compensatory damages to compensate Plaintiff Gomez for having been subjected to unlawful discrimination by Defendant as a result thereof.

## JURISDICTION & VENUE

8. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

9. This is also an action with supplemental jurisdiction over related state law claim pursuant to 28 U.S.C. §1367.

10. State law provides for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his personal computer). Remedies provided under common law for trespass are not exclusive, and may be sought connection with suits brought under the ADA.

11. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the jurisdiction of this court by virtue of the fact its Website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, several of the Defendant's

retail tire stores and automobile repair stores are located in the district. In addition, the Defendant is authorized to conduct business within the state of Florida as a foreign limited liability company.

12. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

**Andres Gomez**

13. Plaintiff Andres Gomez (also referenced as "Plaintiff") is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

14. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Plaintiff is substantially limited in performing one or more major life activities, including (but not limited to) accurately visualizing his world and adequately traversing obstacles.

15. Plaintiff cannot use the computer/internet without the assistance of commercially available screen reader software to interface with the internet and websites located therein.

**Bridgestone Retail Operations, LLC**

16. Defendant Bridgestone Retail Operations, LLC (also referenced as Defendant) is the owner and operator of a chain of retail tire stores and auto repair/maintenance shops under the brand name "Tires Plus."

17. The first Tires Plus store was opened in 1976 and the Tires Plus brand grew to 150 stores and $200 million in revenue by the year 2000, when the company was bought out by Bridgestone Corporation.

18. On information and belief, the "Tires Plus" brand of retail tire stores and automotive repair shops are operated under the Bridgestone Corporation subsidiary, Bridgestone Retail Operations, LLC.

19. On information and belief, there are thirty Tires Plus locations in the Broward and Miami-Dade county area.

**FACTS**

20. Plaintiff's disability limits major life activities, and he requires assistive technologies, auxiliary aids and services for effective communication.

21. At all times material hereto, Defendant Bridgestone Retail Operations, LLC was (and is) an organization which owns and operates retail tire stores and auto repair/ maintenance shops under the brand name "Tires Plus." Each Tires Plus location is open to the public as a retail tire store and auto repair/ maintenance shop. As the owner and operator of Tires Plus retail tire stores, Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant Bridgestone Retail Operations, LLC is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," 42 U.S.C. §12181(7)(E), and as an owner/operator of auto repair/maintenance shops, Defendant is also defined as an entity which owns and/or operates an "other service establishment," as defined at 42 U.S.C. §12181(7)(F) and 28 C.F.R. §36.104(2).

22. Each of Defendant's Tires Plus locations are a place of public accommodation open to the public and are subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §§s 12181(7)(E) and (F), and 28 C.F.R. Part 36. Defendant's Tires Plus retail stores are also referenced throughout as "Place(s) of Public Accommodation," "Tires Plus store(s)," or "retail tire store and auto repair/ maintenance shop."

23. The Defendant controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.tiresplus.com ("Website").

24. Defendant's Website permits the public to obtain information on Tires Plus merchandise, Tires Plus auto repair/ maintenance services (such as oil changes, tune ups, air conditioning service), to obtain coupons for merchandise and coupons for Tires Plus specials on repair and maintenance services, store policies, and other information the Defendant seeks to communicate to the public, and another function is to provide auxiliary aids and services for the disabled. From the Website, the public can schedule an appointment services.

25. For all of the reasons as delineated hereinabove, clearly, the Website is an integral part of the provision of goods and by Defendant. By this nexus, the website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §§s 12181(7)(E) and (F) of the ADA[1].

---

[1] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by

26. The Defendant must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the public.

27. At all times material hereto, Defendant Bridgestone Retail Operations, LLC was (and is) an organization owning and operating the Website. Since the Website is open through the internet to the public as part of their Place of Public Accommodation, Defendant (as the owner and/or operator of the Website) is defined as a "Public Accommodation" within meaning of Title III, 42 U.S.C. §§s 12181(7)(E) and (F) and 28 C.F.R. §36.104(2). As such, Defendant has subjected itself and the Website it has created and maintains, to the Americans with Disabilities Act ("ADA").[2]

28. Plaintiff is a customer who is interested in obtaining services for automobile maintenance and on replacement tires for his companion's automobile, such as tires offered for sale and automobile maintenance which is offered through the Defendant's physical Tires Plus store locations (particularly as offered in the Tires Plus Miami locations at 3820 Bird Road, Coral Gables and at 8502 NW 12th Avenue, Miami), which are both in reasonable proximity to Plaintiff's home.

29. Plaintiff had called the Defendant's Tires Plus store to inquire about the various brands of tires available and the types of automobile service available the Tires

---

law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

[2] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

Plus store. Defendant's representative failed to fully assist Plaintiff and referred Plaintiff to its Website.

30. During the month of December 2016, Plaintiff attempted on several occasions to utilize Defendant's Website to educate himself as to the Tires Plus tires, specials on the tires and the types and prices of automobile repair offered with the intent then going to one of the Tires Plus locations to service his companion's automobile.

31. The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which when utilized allows individuals who are visually impaired to communicate with internet website(s).

32. The Defendant's business contains access barriers that prevent, impair, impede and obstruct the Plaintiff and other visually impaired individuals using keyboards and screen reading software from free and full use of Defendant's Website.

33. The Website also lacks prompting information and accommodations necessary to allow visually impaired individuals who use screen reader software to book an appointment for automobile repair at a Tires Plus location with the intent of patronizing the Defendant's business.

34. The Plaintiff attempted to locate an ***Accessibility Notice***[3] which would direct him to a webpage with contact information for disabled individuals who have questions, concerns or who are having difficulties communicating with the Defendant.

35. The fact that Plaintiff could not communicate with Defendant left him excluded from accessing physical Tires Plus store locations, and left Plaintiff with the

[3] **hyperlink**, or simply a link, is a reference to data that the reader can directly follow either by clicking, tapping, or hovering. A **hyperlink** points to a whole document or to a specific element within a document.

feeling of segregation, rejection, and isolation, as Plaintiff was unable to participate in the same manner as provided to the public.

36. The Plaintiff's inability to access and use accessible auxiliary aids and services has impaired, obstructed, hindered, and impeded Plaintiff's ability to enjoy the goods and services at Defendant's Tires Plus store locations. Plaintiff's inability to enjoy and learn about Tires Plus merchandise and automobile repair services has resulted in *a virtual barrier* which has precluded Plaintiff's purchasing Defendant's goods and services. Plaintiff's access to and enjoyment of Defendant's inventory of goods and services prior to entering Tires Plus locations has hindered, impeded, and inhibited Plaintiff's entry to Defendant's Tires Plus stores. Plaintiff has missed out on purchasing and enjoying Defendant's goods and services. As such, Plaintiff has suffered particularized harm. Because Plaintiff cannot communicate with Defendant, Plaintiff has not had access to the Tires Plus tire prices and automobile repair services at reasonable and discounted prices, nor has Plaintiff had the benefit of Tires Plus coupons and specials for tires and automobile maintenance services (such as oil changes, tune up and air conditioning service).

37. Plaintiff continues to desire to patronize Defendant, but is unable to do so, as he is unable to effectively communicate with the Defendant in order to obtain access to Defendant's physical store locations in order to participate in the goods and services offered at Defendant's Tires Plus stores. Plaintiff's inability to communicate with or comprehend Defendant's Website has impeded Plaintiff's ability to patronize Tires Plus store physical locations. As such, the Plaintiff (and others with vision impairments) will

suffer continuous and ongoing harm from the Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

38. On information and belief, Defendant has not initiated an ADA policy to insure full and equal use of their business by individuals with disabilities.

39. On information and belief, Defendant has not instituted an Effective Communications Committee to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

40. On information and belief, Defendant has not designated an employee as an Accessibility Coordinator to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

41. On information and belief, Defendant has not instituted an Auxiliary Aids and Services Accessibility User Testing Group to insure full and equal use of the Defendant's Auxiliary Aids and Services by individuals with disabilities.

42. On information and belief, Defendant has not instituted an Automated Accessibility Testing program.

43. On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

44. On information and belief, Defendant has not created a Website page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have the www.tiresplus.com website, Applications, and Digital Assets accessible to the visually impaired community.

45. On information and belief, Defendant's Auxiliary Aids and Services do not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[4].

46. On information and belief, Defendant does not have an Axillary Aids and Services Accessibility Policy.

47. On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its Axillary Aids and Services.

48. On information and belief, Defendant has not offered any other credible from of Auxiliary Aids and Services other than its Website.

49. Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its business.

50. Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

51. The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the www.tiresplus.com website.[5]

---

[4] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

[5] Congress expressly stated when passing the ADA, "the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times" and technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required.

52. On information and belief, the Defendant is aware of the common access barriers and barriers to effective communication within its Auxiliary Aids and Services, which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

53. On information and belief, Defendant is aware of need to provide full access to all visitors to its www.tiresplus.com website.[6]

54. Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

55. Such barriers result in punishment and isolation of blind and low vision individuals from the rest of society.

56. According to the National Federation for the Blind[7], there are over seven million Americans with visual disabilities (which makes up 2.3% of the population), and there are 469,300 individuals with visual disabilities living within the state of Florida[8].

57. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices. No price can be put on Plaintiff's inability to shop for himself.

58. Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

---

[6] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g. (www.internetretailer.com/2016/04/01/web-accessibility-what-e-retailers-need-know) (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance)

[7] Statistics for 2015, see https://nfb.org/blindness-statistics

[8] 469,300 is the number of non-institutionalized (male and female, all ages and ethnicities) reported to have a visual disability in 2014; see https://nfb.org/blindness-statistics

59. Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

**Trespass Violations**

60. Plaintiff utilizes his personal computer to access websites such as the Defendant's www.tiresplus.com website. Plaintiff uses his personal computer as a method of conveyance of his personal information. As such, Plaintiff stores his personal information and retains his browsing history on his personal computer.

61. Throughout the Website, the Defendant has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits.

62. The Defendant informs the Website user that the user's personal information and browsing history is collected. Defendant discloses that any individual who accesses its website and commences to shop on that website is subject to having his/her personal information conveyed to the Defendant's related affiliated companies (without so naming those other companies if the site names affiliated companies, list them here), for statistical uses (without so describing that use), and is also considered a "business asset" in the event of any future merger of Defendant with another corporate entity.

63. The Plaintiff was unable to comprehend Defendant's Website; therefore, Plaintiff has/had no choice (and therefore no knowledge) of the Defendant's installation of software and collection of the website user's browsing history and analytics placed on the user's computer.

64. Based upon the review of Defendant's Website, it is clear that, when a user accesses Defendant's Website, the Defendant installs software onto the user's computer. It is clear that the Defendant has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history[9].

65. As such, through its Website, Defendant has committed a trespass against the Plaintiff since the Website places software on the Plaintiff's personal computer without Plaintiff's consent.

**COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

66. Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-59 above.

**Requirement for Effective Communication**

67. It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

68. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

69. Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to

[9] As delineated in the "cookies" and "log files" section of Defendant's Website

ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

70. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

71. Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Defendant's Business is A Place of Public Accommodation**

72. By virtue of the fact that Defendant's Tires Plus stores are open to the public, each Tires Plus retail tire store and auto repair/ maintenance shop is a place of public accommodation subject to the requirements of Title III of the ADA; 42 U.S.C. §§s **1**2181(7)(E) and (F). The ADA prohibits any and all barriers which would limit access by the visually impaired to such places of public accommodation.

73. The virtual barrier to access is just as real as a physical barrier to access, for without information as to the goods and services offered and ability to investigate and choose a Tires Plus store, the visually impaired have no access to the goods and services of those Tires Plus retail tire stores and auto repair/ maintenance shops, which are each a Place of Public Accommodation.

**The Website As A Place of Public Accommodation**

74. Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[10]; see Statement of Interest filed by the Department in *Juan Carlos Gill v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

75. District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. See, *Juan Carlos Gill v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #32] Order Denying Defendant's Motion for Summary Judgment, quoting from *Gomez v. Bang & Olufsen Am., Inc.*, No. 16-23801 at 9 (citing *Rendon v. Vallycrest Prods., Inc.* 249 F.3d 1279 (11th Cir. 2002) for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss).

76. The Courts have held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within

---

[10] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

77. Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[11]; see Statement of Interest filed by the Department in *Juan Carlos Gill v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

78. Pursuant to 42 U.S.C. §§s 12181(7)(E) and (F), Defendant is a *Public Accommodation* under the ADA because it owns and/or operates the www.tiresplus.com website, as defined within §§s 12181(7)(E) and (F), and is subject to the ADA.

79. Additionally, www.tiresplus.com is a *Place of Public Accommodation* pursuant to 42 U.S.C. §§s 12181(7)(E) and (F), as it has a direct nexus to the Tires Plus retail tire stores and auto repair/maintenance shops by providing the public information on the various locations of its tire stores and auto repair/maintenance shops, and offers the public the ability to be educated as to Tires Plus merchandise and auto repair services; which in turn allows the public to determine if they wish to physically patronize Tires Plus's physical tire store and auto repair/ maintenance shop locations and to purchase Tires Plus goods and services.

---

[11] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

80. In addition, Defendant's representatives within its Tires Plus store locations have referred customers to Defendant's Website for additional information, as the Website provides information regarding brands of tires, tire specials, and auto maintenance repair package prices and specials, such that the Website is an integral part of the public's needs with respect to Defendant's business.

81. By Defendant's representatives referring the public /visually impaired individuals to its Website for reference to information on goods and services instead of providing such information at the physical store locations, the Website has been rendered an integral part of Defendant's physical business locations. Thus, the failure of that Website to be accessible to visually impaired individuals impedes visually impaired individuals (such as the Plaintiff) from fully accessing the Defendant's physical business locations.

82. It is clear that the ADA applies to the Defendant's Website, as the Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

83. The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v.*

*Netflix, Inc.*, 869 F. Supp. 2d at 200 (D. Mass. 2012)[12] *Netflix,* (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[13] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd*, 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

84. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

85. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

---

[12] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.

[13] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services

86. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

**Barriers to Access**

87. As a result of the inaccessibility of Defendant's physical places of business precipitated by barriers within its Website, visually impaired individuals are denied full and equal access to Tires Plus physical store locations as Defendant has made available to the public through the information provided on Defendant's Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

88. Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and *Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible.

89. A sampling review of just part of the Defendant's Website revealed that the Website is not functional for users who are visually impaired. The Website contains several types of PETs (easily identifiable and correctable), which occur throughout the Website such as:

1) The language of the document is not identified,
2) Image alternative text is not present, and
3) A form control does not have a corresponding label.

90. Further, the Defendant's Website contains various types of PATs (prone to making the website inaccessible), which occur throughout the Website, such as:

1) Alternative text is likely insufficient or contains extraneous information,
2) An event handler is present that may not be accessible,
3) A heading level is skipped,
4) Flash content is present,
5) Adjacent links go to the same URL,
6) A link contains no text, and
7) Alternative text is likely insufficient or contains extraneous information.

91. More violations may be present on other pages of the Website, and they will be determined and proven through the discovery process.

92. Further, the Website does not offer include the universal symbol for the disabled[14] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

93. There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic Auxiliary Aids and Services components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

94. The Defendant has violated the ADA (and continues to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendant's Auxiliary Aids and Services. These violations within Defendant's Website

---

14  ™, or HTML "Accessibility" link for those individuals who are visually impaired

are ongoing.

**Violations of the ADA**

95. As a result of the inadequate development and administration of Defendant's Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

96. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Andres Gomez injunctive relief; including an order to:

a) Require Defendant Bridgestone Retail Operations, LLC to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.tiresplus.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b) Require Defendant Bridgestone Retail Operations, LLC to take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the www.tiresplus.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant Bridgestone Retail Operations, LLC to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of viewing and locating Tires Plus stores (locations) and becoming informed of Tires Plus tire specials and

specials on automobile repair maintenance services an setting up an appointment for automobile maintenance service online. During that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from purchasing such goods and services made available to the public through Defendant's Website and through Defendant's physical Tires Plus store locations.

97. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Bridgestone Retail Operations, LLC

**COUNT II – TRESPASS**

98. Plaintiff Andres Gomez re-alleges and incorporates by reference the allegations set forth in ¶¶s 1–65 above.

99. Plaintiff's tangible personal property, being his computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant on each and every date that the Plaintiff has accessed Defendant's www.tiresplus.com website. Plaintiff's personal information has suffered a trespass due to the employment of software analytics by Defendant which are present on Defendant's Website, which the Plaintiff has navigated.

100. Plaintiff was unaware that Defendant's Website was placing software on his computer due to his inability to effectively communicate with Defendant's Website.

101. Plaintiff did not consent to the placement of software on his personal computer; therefore Defendant has committed a trespass against Plaintiff.

102. By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of the Plaintiff's personal property in violation of the common law.

103. Defendant's installation, operation, and execution of software on Plaintiff's computer has impaired the condition and value of the Plaintiff's computer.

104. At Defendant's Website location (http://www.tiresplus.com/privacy-policy/) Defendant states the following:

**Tires Plus Privacy Policy**

Use of this Site constitutes your consent to the collection and use of the information as described below in this Privacy Policy.

**(b) Cookies.** "Cookies" are small pieces of information that are stored by a user's Internet browser on a user's hard drive. The Site may store some information on your computer in the form of a cookie or similar file;…. The cookies allow us to recognize you when you return to our site and to provide you with a customized experience that we feel will be of value to you. …..

**(c) Log Files.** This Site automatically collects information pertaining to Your access. Such information may include Your Internet Protocol ("IP") address, as well as other connection and usage information for system administration and troubleshooting purposes. (An IP address indicates the location of Your computer on the Internet.) Tires Plus does not link an IP address to any personally identifiable information.

105. As a direct and proximate result of Defendant's trespass to chattels, nuisance, and interference and unauthorized access of and intermeddling with the Plaintiff's property, the Defendant has injured and impaired on the condition and value of the Plaintiff's computer as follows:

a) By consuming the resources of an/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles and internet connectivity);

b) By infringing on Plaintiff's right to exclude others from his computer;

c) By infringing on Plaintiffs right to determine (as owner of his computer) which programs should be installed and operated on his computer;

d) By compromising the integrity, security, and ownership of Plaintiff's computer; and

e) By forcing the Plaintiff to expend money time, and resources in order to remove the programs installed on his computer without notice or consent.

106. For all of the foregoing, the Plaintiff has no adequate remedy at law.

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff Andres Gomez hereby demands judgment against Defendant Bridgestone Retail Operations, LLC and requests the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant Bridgestone Retail Operations, LLC has violated the Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendant Bridgestone Retail Operations, LLC to update its www.tiresplus.com website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

c) The Court enter an Order requiring Defendant Bridgestone Retail Operations, LLC to clearly display the universal disabled logo[15] within its Website, wherein the logo would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.tiresplus.com website;

d) The Court enter an Order compelling Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA;

e) The Court enter an order requiring Defendants to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

f) The Court enter an Order directing Defendants to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendants to undertake and complete corrective procedures to the Website;

---

15

g) The Court enter an Order directing Defendants to establish a policy of web accessibility and accessibility features for the Website to insure effective communication for individuals who are visually impaired;

h) The Court to declare that Defendant's actions, as set forth above, violate the Florida common law tort of trespass as alleged above in that the Website has placed unwarranted and unauthorized software on Plaintiff's computer without his consent;

i) The Court to award injunctive and equitable relief as applicable, including:

   i. prohibiting Defendant from engaging in the acts alleged above;

   ii. requiring Defendant to provide effective communication to users of its Website such that individuals who are visually impaired have knowledge and notice of Defendant's placement of software on their computer(s); and

   iii. requiring Defendant to provide Plaintiff reasonable means to decline participation in Defendant's placement of software on his computer;

j) The Court award damages in an amount to be determined at trial;

k) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees;

l) As to the count of trespass, the Court to award Plaintiff other equitable relief as the Court deems proper; compensatory damages sustained by Plaintiff; and permanent injunctive relief prohibiting Defendant from

engaging in the conduct and practices of trespass as complained of herein; and

m) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 18th day of April, 2017.

Respectfully submitted,

*s/Scott Dinin*
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*